# Exhibit 1

EUGENE G. IREDALE: SBN 75292
email: egiredale@iredalelaw.com
JULIA YOO: SBN 231163
email: jyoo@iredalelaw.com
SARAH MUSUMECI: SBN 328306
email: smusumeci@iredalelaw.com
**IREDALE & YOO, APC**
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

**Attorneys for Plaintiff Karen Parker**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAREN PARKER,

Plaintiff,

v.

JUAN PRISHKER; UNITED STATES OF AMERICA; and DOES 1-7 and 11-15.

Defendants.

CASE NO.: 24-cv-2138-TWR-MSB

**SECOND AMENDED COMPLAINT FOR:**

1) Intentional Infliction of Emotional Distress (FTCA Claim);
2) Negligence (FTCA Claim);
3) False Imprisonment (FTCA Claim);
4) Gender Violence (FTCA, Cal. Civil Code § 52.4); and
5) Bane Act (FTCA Claim, Cal. Civ. Code § 52.1)

COMES NOW Plaintiff Karen Parker, through her attorneys of record, Iredale and Yoo, APC, and alleges and complains as follows:

# I.
# INTRODUCTION

Karen Parker is a retired social worker. She volunteered as a humanitarian aid worker who provided first aid services to migrant detainees at the U.S.-Mexico border in the area of Jacumba Springs, California. Ms. Parker frequently worked with Border Patrol agents to ensure the timely delivery of urgent medical care to immigrants in the custody of the United States Customs and Border Protection Agency ("CBP"). On December 26, 2023, while she was attempting to secure transportation for a sick immigrant family, Border Patrol Agent Juan Prishker forcibly showed Ms. Parker sexually explicit images of his penis. Ms. Parker was alone and in the dark, with no other law enforcement personnel in sight. Ms. Parker wanted to leave, but Defendant Prishker repeatedly blocked her attempts to distance herself from the armed agent. Plaintiff now seeks damages for Defendant Prishker's lewd, traumatizing, and illegal conduct.

Prishker is a repeat offender. In December 2022, Prishker committed sexual battery on two Mexican citizens who had been placed in his custody for transportation. He inserted his hand under their shirts to manipulate their breasts and nipples. After the women lodged a complaint, the Border Patrol determined that there were no witnesses to the conduct other than Prishker and the two women, Raquel Roman Mundo and Maribel Aquino. The Border Patrol referred this matter for a criminal review by the U.S. Attorney's office, which declined prosecution. In these circumstances, 6 C.F.R. § 115.71 requires that after the conclusion of a criminal investigation unless the allegation is found to be "unsubstantiated," an administrative investigation "shall be conducted." While prosecution was declined, that decision was based on a standard of whether a criminal charge could be proved beyond a reasonable doubt. The standard for administrative finding is preponderance of evidence.

Even though the U.S. Attorney's Office declined criminal prosecution because of the lack of third party witnesses, the allegations were substantiated. There was a timely and specific complaint; the accounts of the two victims coincided; and it appears that Prishker was never even interviewed. Thus, under 6 C.F.R. § 115.71 an administrative investigation was required unless there was a determination that the allegations were unsubstantiated. There was no such determination; no one in the Border Patrol initiated an agency administrative investigation. Had such an investigation occurred, it is more likely than not, that Prishker would, if not discharged, have been sufficiently deterred from future misconduct that his treatment of Karen Parker would never have occurred.

## II.
## GENERAL ALLEGATIONS

1. Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 for this action which is brought under the Federal Tort Claims Act.

2. Plaintiff's claim under the Federal Tort Claims Act was timely filed on May 1, 2024. Pursuant to 28 U.S.C. § 2675, "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Plaintiff's claim was deemed a denial on November 1, 2024.

3. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Southern District of California because a substantial part of the acts or omissions which form the basis of Plaintiff's claims occurred in the Southern District of California.

## III.
## PARTIES

4. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same by reference as if fully set forth herein.

5. Plaintiff Karen Parker is a United States citizen who, at all times relevant to this complaint, resides in Boulevard, California.

6. Juan Prishker committed the torts alleged in this complaint in the course of his work as a U.S. Border Patrol Agent. Defendant United States of America is the appropriate defendant under the Federal Torts Claim Act.

7. Does 1-7 and 11-15 are CBP and Border Patrol officials and employees whose names Plaintiff does not currently know.

8. Defendant Juan Prishker was at all times relevant to this complaint a Border Patrol Agent employed by Customs and Border Protection, an agency of the United States Department of Homeland Security.

9. The United States is liable for torts committed by federal employees acting within the course and scope of employment. 28 U.S.C. § 1346(b).

10. All acts and omissions that give rise to Plaintiff's FTCA claims were committed by employees of CBP, an agency of the United States government, who were acting within the scope of their employment at the time.

11. At all relevant times, Agent Prishker was a "law enforcement officer" within the meaning of 28 U.S.C. § 2680(h).

12. The acts and omissions complained of occurred in the state of California and are tortious under the laws of the state of California.

13. Does 1-7 are CBP and Border Patrol employees who had knowledge of Prishker's overt and notorious abusive conduct and who failed to intervene to stop it, and failed to report it for prompt remedial action and investigation.

14. Doe 8 has been identified as Michael Cappara.

15. Doe 9 has been identified as Nawar Shora.

16. Doe 10 has been identified as Rosemary Galvan.

17. Cappara, Shora, Galvan and Does 11-15 are the officials who were responsible for ensuring compliance with the Prison Rape Elimination Act (PREA) standards and regulations for the Boulevard Border Patrol Station during the period of January 1, 2022 through June 1, 2024. They failed to supervise Prishker adequately, and failed to train, enforce mandatory Federal regulations for CBP compliance with PREA standards, and failed to commence an administrative investigation into Prishker's sexual abuse of two Mexican woman detainees.

18. Had Cappara, Shora, Galvan and Does 1-7 and 11-15 complied with their mandatory duties, Prishker would not have committed his wrongs against Plaintiff.

## IV.
## FACTS

***Defendant Prishker's Conduct Toward Ms. Parker***

19. Karen Parker is a retired social worker with an MSW Degree. She has first aid training.

20. In May of 2023, Ms. Parker began volunteering as a humanitarian aid worker at Border Patrol's open air detention sites in and near Jacumba and Boulevard, California.

21. Karen provided basic first aid to detainees.

22. On or about December 26, 2023, at approximately 7:00 p.m., Karen was assisting an Angolan family in the Willows camp.

23. The mother and son had been previously hospitalized, and Karen wanted to facilitate their return for hospital treatment.

24. Finding no agents in the camp, Karen drove east along the border wall to where the Border Patrol agents were normally parked.

25. Ms. Parker encountered Border Patrol Agent Juan Prishker alone in his truck.

26. Ms. Parker got out of her car, Prishker exited his truck, and the two stood between their respective vehicles.

27. Ms. Parker requested priority transport for the Angolan family, but Prishker did not respond to this request.

28. Instead, Defendant Prishker blocked Ms. Parker's attempt to retreat and walk around the back of her car to create space between them.

29. After blocking her exit, Prishker told Ms. Parker that he wanted to show her something.

30. Ms. Parker responded by telling Prishker that she had a bad day, and that Prishker was scaring her.

31. Prishker reached into his vehicle, grabbed his phone, and then showed Ms. Parker, who felt unable to leave, two pictures of his penis.

32. In one of the pictures, Prishker's penis was flaccid, and in the other, it was erect with a white ring around it.

33. Prishker asked Ms. Parker what she thought about the photographs.

34. Once again, Ms. Prishker tried to move to the right, but Prishker blocked her with his large body.

35. Defendant Prishker then bizarrely asked Ms. Parker the "difference between good and evil," and whether they were "the same."

36. Ms. Parker, alone and in the dark, was now terrified that Prishker would assault and harm her in the darkness.

37. Ms. Parker was alone in the dark with an armed law enforcement agent and nobody else in sight.

38. Prishker is a large man who towered over Ms. Parker.

39. Ms. Parker began trying to back away so she could get to her driver's side door. She was finally able to escape.

40. Ms. Parker asked Prishker again about the Angolan family, and he said he would let the other agents know.

41. Ms. Parker went back into the camp and told another volunteer what had happened, and then they left.

***Prishker Detained and Sexually Assaulted Two Migrant Women a Year Before His Interaction with Ms. Parker, Incidents Known to the USA***

42. On or around December 2022, approximately a year before Prishker's interaction with Ms. Parker, a Mexican citizen, Raquel Roman Mundo, encountered Prishker when she crossed the United States/Mexico Border.

43. Two Border Patrol officers detained Ms. Roman Mundo when she crossed the border. The officers turned her over to Prishker, who instructed her to put her hands on his vehicle.

44. Ms. Roman Mundo complied with Prishker's order and he searched her. As he was searching her, Prishker reached into Raquel Roman Mundo's shirt, underneath her bra and groped her breasts.

45. Another migrant woman, Maribel Aquino, who has since passed away, was next to Ms. Roman Mundo at the time. Prishker searched her in a similar fashion. Ms. Roman Mundo watched as Prishker reached under the second woman's shirt and touched her breasts. According to Ms. Roman Mundo, Ms. Aquino looked very uncomfortable.

46. On information and belief, employees and agents of the United States were aware of these events.

***Prishker Had a Pattern of Consistent and Notorious Sexual Misconduct***

47. On or about January 30, 2024, a YouTube video creator named "Danny Mullen" uploaded a video titled "Exposing a PERVERTED Border Patrol Agent! (Must watch)." The video shows content creators Danny Mullen, Leandro Fabian Dottavio, and Holly Day visiting the U.S.-Mexico border.

48. In the video, Agent Prishker approaches the group in his Border Patrol vehicle while dressed in his Border Patrol uniform. Defendant Prishker remarks that Ms. Day is "unusually hot." Defendant Prishker then exits his vehicle and immediately shows Ms. Day photographs of his penis on his phone.

49. Prishker tells the group that the girth of his penis is 7". He then exposes his penis to Mr. Mullen and Ms. Day.

50. After showing the group his penis, he pulls his phone out again and displays photographs of his penis.

51. In October 2024, Defendant Prishker was charged by the San Diego District Attorney's Office with two felonies, sexual battery and false imprisonment, and four misdemeanor counts of distributing obscene material between December 2022 and January 2024. Ms. Parker was one of the victims in the criminal complaint against Prishker.

52. Prishker's conduct in subjecting women to sexual harassment, the nonconsensual exhibition of his genitals and/or photos of his genitals, and sexual assaults was open and notorious. Prishker, far from concealing his actions, reveled in publicizing them. His conduct was widely known among his Border Patrol peers and supervisors.

53. As demonstrated by Prishker's open display of his cell phone photos, followed by the public exposure of his member to YouTubers in broad daylight while in uniform and on duty, Prishker made no secret of his perversions. In fact, he bragged to peers about them.

54. Federal regulations and mandatory CBP policy mandate that sexual harassment, including Prishker's conduct, and sexual assaults, are strictly prohibited. Moreover, federal law requires any member of Customs and Border Protection ("CBP") having knowledge of such conduct by CBP employees to report that conduct to CBP authorities for investigation and appropriate discipline.

55. The requirements of CBP's "zero tolerance" policy mandates an investigation of such allegations. The regulations impose on supervisors the obligation to prevent conduct such as Prishker's, to supervise subordinates to ensure compliance, to investigate violations, and to report proscribed conduct.

56. 28 C.F.R § 115.311 requires that an agency shall have a written policy of zero tolerance of sexual abuse and harassment, and outlining the agency's approach to preventing, detecting and responding to such conduct.

57. 28 C.F.R. § 115.3.11 (c) requires that when an agency operates more than one facility, each facility will designate a PREA compliance manager to coordinate the faculty's compliance with PREA standards.

58. 28 C.F.R. § 115.315 (b) states that "the agency shall not conduct cross-gender pat-down searches except in exigent circumstances. 22 C.F.R. § 115.3 (5c) requires documentation of any cross-gender strip or pat-down searches. 28 C.F.R. § 115.315 (F) requires that the agency "shall" train security staff to conduct cross-gender pat-down searches (if an exigency requires such) "in a professional and respectful manner, and in the least intrusive manner possible" consistent with security.

59. Prishker's sexual battery occurred as part of his pat-down search of the two women detainees.

60. The agency officials identified as the officials responsible for ensuring compliance with the Prison Rape Elimination Act standards for the Boulevard Border Patrol Station during the period of January 1, 2022 through June 1, 2024 have been identified as Michael Cappara, Nawar Shoran and Rosemary Galvan.

61. These officials failed to comply with the mandatory requirements of providing training as required by 28 C.F.R. § 115.315 (f), to Boulevard Border Patrol personnel, including Prishker.

62. 28 C.F.R. § 115.331 mandates training for all employees on the CBP zero-tolerance policy, how to fulfill the employees' responsibilities to prevent, detect, report, and respond to sexual abuse and harassment.

63. 28 C.F.R. § 115.331 further requires all current employees to be trained within one year, with a refresher training every two years. On information and belief, the three named Doe defendants failed in their mandatory obligation to comply with 28 § 115.331.

64. Nor did the three Doe Defendants ever conduct an administrative investigation of Prishker's antecedent conduct before Prishker's conduct with Plaintiff. Prishker was never even interviewed as to his conduct with Ms. Roman Mundo and Ms. Aquino.

65. On information and belief, the three Doe Defendants violated the requirements of 28 C.F.R. § 115.386 for a sexual abuse incident review within 30 days of the conclusion of any investigation, including the assessment of any need for a change of policy, assessment of monitoring technology and preparation of a written report to the facility used and the PREA compliance manager.

66. Supervisors with knowledge of such misconduct are required to report it for investigation and to stop it. Under the CBP policy, agency personnel are required to "immediately report any knowledge, suspicions or information regarding an incident of sexual abuse, or any employee misconduct or neglect that may have contributed to any incident of sexual abuse, assault or retaliation." These obligations are **<u>mandatory</u>**, not discretionary. CBP policy states, "**<u>All</u>** sexual abuse and assault allegations shall be considered significant incidents. All allegations of sexual abuse and assault as defined in the Standards must immediately be reported to the Commissioner's situation room and the Joint Intake Center."

**<u>FIRST CAUSE OF ACTION</u>**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(By Karen Parker Against Prishker and the United States)**

67. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same by reference as if fully set forth herein.

68. By engaging in the acts alleged herein, Defendant engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiff to suffer emotional distress.

69. It was outrageous conduct for Defendant Prishker to block Plaintiff's exit and show her multiple photos of his erect penis to Plaintiff.

70. As a direct, proximate and foreseeable result, Plaintiff suffered severe emotional distress, and the outrageous conduct was the cause of the emotional distress suffered by Plaintiff.

**<u>SECOND CAUSE OF ACTION</u>**
**NEGLIGENCE**
**(By Karen Parker Against All Defendants)**

71. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same by reference as if fully set forth herein.

72. Defendant Prishker had a duty to Plaintiff to act with ordinary care and prudence so as to not cause harm or injury to another.

73. Defendant Prishker had a duty to not falsely imprison Plaintiff.

74. Defendant Prishker had a duty to not intentionally inflict emotional distress on Plaintiff.

75. By engaging in the acts alleged herein, Defendant Prishker failed to act with ordinary care and breached his duty of care owed to Plaintiff as a result of which she suffered damages.

76. The law imposes a duty upon CBP personnel to comply with their obligations of preventing sexual abuse, supervising subordinates to ensure proper conduct, and promptly reporting sexual harassment and abuse. The law and CBP mandatory rules require timely training, investigations of misconduct and proper

discipline, not only for the victim of the immediate violations, but in order to deter misconduct towards potential future victims. The duty is for the protection of actual and potential victims, such as Karen Parker.

77. Does 1-7 are Border Patrol employees who had knowledge of Prishker's overt and notorious abusive conduct and who failed to intervene to stop it, and failed to report it for prompt remedial action and investigation.

78. Michael Cappara, Nawar Shora, Rosemary Galvan and Does 11-15 are Border Patrol officials and supervisors who failed to supervise Prishker adequately, and failed to intervene, halt or report Prishker's conduct towards other victims who suffered Prishker's assaults, threats, insults and misconduct before Prishker's conduct towards Plaintiff Karen Parker.

79. Had Cappara, Shora, Galvan, Does 1-7 and 11-15 complied with their mandatory duty, Prishker would not have committed his wrongs against Plaintiff.

80. Cappara, Shora, Galvan, Does 1-7 and 11-15 breached their mandatory duty. Their conduct was in the course and scope of their federal employment.

## THIRD CAUSE OF ACTION
## FALSE IMPRISONMENT
## (By Karen Parker Against Prishker and the United States)

81. Plaintiff realleges all prior paragraphs of this complaint and incorporate the same by reference as if fully set forth herein.

82. By the actions alleged herein, Defendant Prishker intentionally deprived Plaintiff of her freedom of movement and confined her against her will.

83. Defendant Prishker confined Ms. Parker without her knowing or voluntary consent.

84. Ms. Parker was compelled to stay where she did not want to remain for the duration of her encounter with Defendant Prishker. Defendant Prishker had no lawful basis to restrict Ms. Parker's movement.

85. By depriving Plaintiff of her freedom of movement, Defendant Prishker's conduct was a substantial factor in causing Plaintiff's harm.

86. The unlawful confinement caused Plaintiff to suffer injury, damage, loss or harm according to proof at the time of trial.

**FOURTH CAUSE OF ACTION**
**GENDER VIOLENCE (FTCA, CAL. CIVIL CODE § 52.4)**
**(By Karen Parker Against Prishker and the United States)**

87. Plaintiff incorporates by reference all allegations in the Complaint as if fully set forth herein.

88. Prishker's conduct violated California Civil Code § 52.4 and constituted gender violence. Gender violence is a form of sex discrimination and is defined as:

> (c) For purposes of this section, "gender violence" is a form of sex discrimination and means either of the following:
>
> > (1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.
> >
> > (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

89. As a consequence of Prishker's conduct, Plaintiff suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE BANE ACT (FTCA, CAL. CIVIL CODE § 52.1)**
**(By Karen Parker Against Prishker and the United States)**

90. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same by reference as if fully set forth herein.

91. Defendant United States, by the actions of its employee, Prishker, by threat, intimidation and/or coercion violated Plaintiff's rights under California Civil Code § 52.1 by interfering with Plaintiff's right to protection from bodily restraint, harm and insult, as secured by California Civil Code § 43.

92. Prishker, while on duty, and acting under color of law, interfered by threat, intimidation and coercion with the exercise and enjoyment by Ms. Parker of rights secured by the laws of California, including, but not limited to, her right to personal bodily integrity, freedom from bodily restraint or harm, and freedom from personal insult, as guaranteed by California Civil Code § 43.

93. As a result of Prishker's conduct, under color or law, Ms. Parker suffered fear, embarrassment, humiliation

94. As a proximate result of the acts of Prishker, Plaintiff sustained damage and injury.

## PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

1) For compensatory general and special damages in an amount in accordance with proof.
2) For expenses and costs of suit as permitted by law.
3) For any other relief that is just and proper.

DATED: August 19, 2026

Respectfully submitted,

**IREDALE AND YOO, APC**

/s/ *Eugene Iredale*
**EUGENE IREDALE**
**JULIA YOO**
**SARAH MUSUMECI**
*Attorneys for Plaintiffs*